1

**HOGAN LOVELLS US LLP**
Vassi Iliadis (SBN 296382)
2  James Ettinger (SBN 344292)
1999 Avenue of the Stars, Suite 1400
3  Los Angeles, California 90067
Telephone: (310) 785-4600
4  Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
5  jay.ettinger@hoganlovells.com

6  Allison Holt Ryan (*pro hac vice* forthcoming)
555 Thirteenth Street NW
7  Washington, D.C. 20004
Telephone:  (202) 637-5600
8  allison.holt-ryan@hoganlovells.com

9  *Attorneys for Defendant*
*The Walt Disney Company*
10

11

12

13                    **UNITED STATES DISTRICT COURT**

14                    **NORTHERN DISTRICT OF CALIFORNIA**

15

16  JOSHUA SADLOCK, individually and on
behalf of all other persons similarly situated,

17                          Plaintiff,

18              v.

19  THE WALT DISNEY COMPANY,

20                          Defendant.

| |
|---|
| Case No.  3:22-cv-09155 |
| The Honorable Edward M. Chen |
| **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Date:  June 1, 2023 |
| Time: 1:30pm |
| Courtroom 4 |
| *[Declaration of Sami Morgan, Declaration of Kelsey Raschke, Declaration of Scott Connor, and [Proposed] Order Filed Concurrently Herewith]* |

21

22

23

24

25

26

27

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 1, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 04 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant The Walt Disney Company ("Disney" or "Defendant") will, and hereby does, move the Court for an order to compel individual arbitration of the claims of Plaintiff Joshua Sadlock ( "Plaintiff") and stay this action pending the completion of the individual arbitration proceeding. This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, specifically 9 U.S.C. § 3, calling for a stay of court proceedings when the issues therein are referable to arbitration, and 9 U.S.C. § 4, providing for the Court to issue an order directing the parties to arbitrate in accordance with the terms of their agreements.  Here, Plaintiff twice assented to binding arbitration provisions:  first, when enrolling in and registering a Disney Bundle subscription in 2021 operated by Disney Streaming, and second, when continuing to use his Disney Bundle subscription after receiving notice of an update to the subscriber agreement in 2022.  He also assented to a binding arbitration provision on ESPN.com when he created an account in 2013.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by telephone on March 16, 2023.

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities in support thereof; the Declaration of Sami Morgan, and all exhibits thereto; the Declaration of Kelsey Raschke, and all exhibits thereto; the Declaration of Scott Connor, and all exhibits thereto; all documents in the Court's file; and on such other arguments as may be presented to the Court.

- 1 -

1    Dated:  April 6, 2023

2                                                    HOGAN LOVELLS US LLP

3                                                    By: /s/ *Vassi Iliadis*

4                                                    Vassi Iliadis (SBN 296382)
                                                     James Ettinger (SBN 344292)
5                                                    HOGAN LOVELLS US LLP
                                                     1999 Avenue of the Stars, Suite 1400
6                                                    Los Angeles, California 90067
                                                     Telephone: (310) 785-4600
7                                                    Facsimile: (310) 785-4601
                                                     vassi.iliadis@hoganlovells.com
8                                                    jay.ettinger@hoganlovells.com

9                                                    Allison M. Ryan
                                                     (*pro hac vice applications to be submitted*)
10                                                   HOGAN LOVELLS US LLP
                                                     555 Thirteenth Street, NW
11                                                   Washington, D.C. 20004
                                                     Telephone: (202) 637–5600
12                                                   Facsimile: (202) 637–5910
                                                     allison.holt-ryan@hoganlovells.com
13

14                                                   *Attorneys for Defendant*
                                                     *The Walt Disney Company*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- 2 -
DEFENDANT'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY ACTION
CASE NO. 3:22-CV-09155-EMC

1

## **TABLE OF CONTENTS**

2

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ vi

3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

4

INTRODUCTION ...................................................................................................................... 1

5

BACKGROUND ........................................................................................................................ 2

6

      A.   ESPN's Services ............................................................................................... 2

7

      B.   Plaintiff Agreed to Individually Arbitrate His Claims When He Accepted

8
            Disney+ and ESPN+ Subscriber Agreements. ................................................ 2

9

            i.    Plaintiff Purchased and Enrolled in a Disney Bundle Subscription in
                September 2021 ................................................................................... 3

10

            ii.   Plaintiff Received Notice of an Update to His Subscriber Agreement in
                September 2022 ................................................................................... 7

11

12
            iii.  The Subscriber Agreements Include A Prominent Binding Arbitration
                And Class Action Waiver Provision. ................................................. 7

13

ARGUMENT ............................................................................................................................. 9

14

I.     The FAA Strongly Favors The Enforceability Of Arbitration Agreements. ..................... 9

15

II.    Plaintiff INDISPUTABLY Entered Into a Valid And Enforceable Arbitration
      Agreement With Disney ................................................................................................... 11

16

      A.   Plaintiff Manifested His Assent to Arbitrate. ................................................. 12

17

      B.   Disney's Arbitration Provision Is Not Unconscionable. ................................. 17

18

            i.    Disney's Arbitration Provision is not procedurally unconscionable. .............. 17

19

            ii.   Disney's Arbitration Provision is not substantively unconscionable ............... 19

20

III.   Plaintiff Agreed to Arbitrate "Gateway" Issues of Arbitrability. ...................................... 20

21

IV.  WERE THIS COURT TO ASSESS ARBITRABILITY, Plaintiff's Claims Are
      COVERED BY THE ARBITRATION AGREEMENT ...................................................... 22

22

23

V.    A Stay of the Proceeding is Warranted. .......................................................................... 23

24

CONCLUSION ......................................................................................................................... 24

25

26

27

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Adkins v. Facebook, Inc.*,
    2019 WL 3767455 (N.D. Cal. Aug. 9, 2019)................................................................18

5

6

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
    855 F.2d 1470 (9th Cir. 1988)..........................................................................................2

7

8

*Alfia v. Coinbase Glob., Inc.*,
    2022 WL 3205036 (N.D. Cal. July 22, 2022)................................................................17

9

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995).......................................................................................................10

10

11

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011)...........................................................................................22

12

13

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).......................................................................................................20

14

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).............................................................................................9, 19, 20

15

16

*Belton v. Comcast Cable Holdings, LLC*,
    60 Cal. Rptr. 3d 631 (Cal. Ct. App. 2007)...............................................................18, 19

17

18

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2002)..............................................................................12, 13, 14

19

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015).................................................................................20, 22

20

21

*Buckley v. Gallo Sales Co.*,
    949 F. Supp. 737 (N.D. Cal. 1996) ..................................................................................2

22

*Campos v. JPMorgan Chase Bank, NA*,
    2019 WL 827634 (N.D. Cal. Feb. 21, 2019).................................................................11

23

24

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000)..............................................................................9, 10, 22

25

26

*CIGNA Health Care of St. Louis, Inc. v. Kaiser*,
    294 F.3d 849 (7th Cir. 2002)..........................................................................................24

27

*Coneff v. AT & T Corp.*,
    673 F.3d 1155 (9th Cir. 2012).................................................................................19, 20

28

*Conrad v. Phone Directories Co.*,
   585 F. 3d 1367 (10th Cir. 2009)....................................................................2

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...................................................................................9

*Diaz v. Intuit, Inc.*,
   2017 WL 4355075 (N.D. Cal. Sept. 29, 2017), *motion to certify appeal denied*,
   2018 WL 934875 (N.D. Cal. Feb. 16, 2018)..............................................22

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).................................................................................9

*Evans v. All. Funding*,
   2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) .........................................14

*In re Facebook Biometric Info. Priv. Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................................................17

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)........................................................................11, 20, 22

*Flores-Mendez v. Zoosk, Inc.*,
   2022 WL 2967237 (N.D. Cal. July 27, 2022) ......................................18, 20

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   140 S. Ct. 1637 (2020).................................................................................9

*Geier v. m-Qube, Inc.*,
   824 F.3d 797 (9th Cir. 2015) (per curiam)................................................22

*George v. eBay, Inc.*,
   286 Cal. Rptr. 3d 492 (Cal. Ct. App. 2021) ............................................19

*Gillman v. Chase Manhattan Bank, N.A.*,
   534 N.E.2d 824 (N.Y. 1988) ....................................................................17

*Hansen v. Ticketmaster Ent., Inc.*
   2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) ....................................15, 16

*Hayes v. Kutty*,
   2017 WL 3208695 (Pa. Super. Ct. July 28, 2017) ....................................11

*HC Dalmoreproduct v. Kogan*,
   145 F.3d 1338 (9th Cir. 1998)....................................................................2

*Heller v. Rasier, LLC*,
   2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ..............................................17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ..................................................................................................20

*Kilgore v. KeyBank, Nat. Ass'n*,
718 F.3d 1052 (9th Cir. 2013) ....................................................................................19

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
440 F. App'x 604 (10th Cir. 2011) ...............................................................................2

*Laymon v. J. Rockcliff, Inc.*,
219 Cal. Rptr. 3d 185 (Cal. Ct. App. 2017) ...............................................................12

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ...............................................................................12

*Mahamedi IP L., LLP v. Paradice & Li, LLP*,
2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ............................................................24

*Micheli & Shel, LLC v. Grubhub Inc.*,
588 F. Supp. 3d 483 (S.D.N.Y. 2022) .........................................................................21

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) ........................................................................10, 20, 21

*Morris v. Redwood Empire Bancorp*,
27 Cal. Rptr. 3d 797 (Cal. Ct. App. 2005) ................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................................................22

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*,
874 F. Supp. 606 (S.D.N.Y. 1995) .............................................................................11

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th (9th Cir. 2023) .................................................................................12, 13, 14

*U.S. ex rel. Oliver v. Parsons Co.*,
195 F.3d 457 (9th Cir. 1999) ......................................................................................11

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*,
989 F.2d 1077 (9th Cir. 1993) ....................................................................................22

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
282 P.3d 1217 (Cal. 2012) ...................................................................................16, 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ...............................................................................................20, 21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ......................................................................................14

- iv -

*S.S. by and through Stern v. Peloton Interactive, Inc.*,
  566 F. Supp. 3d 1019 (S.D. Cal. 2021) ..................................................................10

*Salley v. Option One Mortg. Corp.*,
  925 A.2d 115 (Pa. 2007) ........................................................................................17

*Sinavsky v. NBCUniversal Media, LLC*,
  2021 WL 4151013 (S.D.N.Y. Sept. 13, 2021) .......................................................21

*Smith, Valentino & Smith, Inc. v. L.A. Super. Ct.*,
  551 P.2d 1206 (Cal. 1976) .....................................................................................12

*Stiener v. Apple Computer, Inc.*,
  2007 WL 4219388 (N.D. Cal. Nov. 29, 2007).......................................................24

*Thompson v. Isagenix Int'l LLC*,
  849 F. App'x 712 (9th Cir. 2021) ..........................................................................14

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016)................................................................................17

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
  46 F. App'x 412 (9th Cir. 2002) ............................................................................23

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007)..................................................................................10

*West v. Uber Techs.*,
  2018 WL 5848903 (C.D. Cal. Sept. 5, 2018)........................................................16

**Statutes**

Cal. Civ. Code § 1550 .....................................................................................................11

Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 ...................................9, 10, 11, 23

Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons.
  Stat. §§ 5701, *et seq.* ...........................................................................................1, 23

**Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................2, 14

JAMS Streamlined Arbitration Rules & Procedure, Rule 8(b), available at
  https://www.jamsadr.com/rules-streamlined-arbitration.com (last visited Dec.
  9, 2022) ...................................................................................................................21

Local Rule 7-4(a)(3)...........................................................................................................1

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

Pursuant to Local Rule 7-4(a)(3), this motion raises the following issues:

3

4

(1)      Did Disney provide reasonably conspicuous notice of its 2021 Subscriber

Agreement?

5

6

(2)      Did Plaintiff assent to Disney's 2021 Subscriber Agreement, including the

7

Arbitration Provision therewithin?

8

(3)      Did Disney provide reasonably conspicuous notice of its 2022 Subscriber

9

Agreement?

10

(4)      Did Plaintiff assent to Disney's 2022 Subscriber Agreement, including the

11

Arbitration Provision therewithin?

12

13

(5)      Is the delegation clause in the Arbitration Provision valid and enforceable such

that the arbitrator should decide the gateway issues of arbitrability?

14

15

(6)      If not, is the Arbitration Provision nevertheless valid and enforceable such that

16

the Court should decide arbitrability and compel Plaintiff's claims to individual arbitration?

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Joshua Sadlock ("Plaintiff") asserts claims against Defendant The Walt Disney Company ("Disney") under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701, *et seq.*, arising out of Disney's purported use of the Oracle BlueKai pixel on ESPN.com.  But as an ESPN user and Disney Bundle subscriber, Plaintiff and Disney voluntarily entered into valid and enforceable agreements that mandate arbitration of his alleged claims.

Specifically, Plaintiff agreed to arbitrate "any dispute" with Disney on an ***individual*** basis—instead of the class action lawsuit he has brought here.  Plaintiff agreed to individually arbitrate any claims against Disney at least twice: (1) when he subscribed for a Disney Bundle subscription in September 2021 and agreed to the Disney+ and ESPN+ Subscriber Agreement ("2021 Subscriber Agreement"); and (2) when he received an updated Subscriber Agreement in September 2022 and continued to use Disney's services thereafter ("2022 Subscriber Agreement") (collectively, "Subscriber Agreements"). The Subscriber Agreements each contain clear and conspicuous arbitration agreements that govern this dispute, as well as agreements to delegate to the arbitrator—not the court—the exclusive authority to resolve questions about the application, scope or enforceability of the arbitration agreements.  Plaintiff's claims are thus subject to the arbitration agreements and the agreements to delegate to the arbitrator questions about the enforceability and scope of the arbitration clause, all of which must be enforced under well-established law.  Simply put, this case does not belong in this Court.  Disney respectfully requests that the Court grant the Motion, compel arbitration of Plaintiff's claims on an individual basis, and stay this litigation pending the completion of individual arbitration proceedings. [1]

---

[1] This Motion satisfies Defendant's obligation to respond to the Complaint (ECF No. 1) at this

1

## BACKGROUND

2

### A. ESPN's Services.

3

4           ESPN, an indirect subsidiary of The Walt Disney Company, is an entertainment and sports

5   programming company.  *See* Declaration of Sami Morgan ("Morgan Decl.") ¶ 2.  ESPN owns and

6   operates ESPN.com and offers a related subscription service, ESPN+, which provides subscribers

7   with access to exclusive ESPN articles and streaming content.  *Id*.  The ESPN.com website

8   exclusively hosts ESPN+'s web-based content.[2]  *Id*.  ESPN+ and Disney+ are both operated by

9   Disney Streaming Services, LLC, and its affiliates ("Disney Streaming"), all indirect subsidiaries

10  of The Walt Disney Company.  *See id.*  Disney Streaming offers a combined subscription package

11  titled the Disney Bundle, which includes Disney+ and ESPN+ along with Hulu, another service

12  operated by a subsidiary of The Walt Disney Company.  *Id*. ¶ 4.

13

14  ### B. Plaintiff Agreed to Individually Arbitrate His Claims When He Accepted Disney+ and ESPN+ Subscriber Agreements.

15

16          In 2021, Plaintiff purchased and enrolled in a Disney Bundle subscription.  Morgan Decl.

17  ¶¶ 7-12. In doing so, Plaintiff assented to the 2021 "Disney+ and ESPN+ Subscriber Agreement."

18  *Id*.  Plaintiff again assented to the updated 2022 Subscriber Agreement when continuing to use his

19

20  stage.  *See HC Dalmoreproduct v. Kogan*, 145 F.3d 1338 (9th Cir. 1998) (noting that an arbitration
    motion should be treated the same way as a 12(b) motion, for purposes of delaying the need to file
21  an answer."); *Buckley v. Gallo Sales Co.*, 949 F. Supp. 737, 739-40 (N.D. Cal. 1996) (treating a
    motion to stay pending arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter
22  jurisdiction, which "must be decided before other motions . . . ." ); *see also, e.g., Lamkin v.
    Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 608 (10th Cir. 2011) (holding that parties
23  moving for arbitration in response to a complaint need not file an answer or assert potential
    defenses because such a requirement, which would undercut the "right *not to litigate*," "is a non-
24  sequiter"); *Conrad v. Phone Directories Co.*, 585 F. 3d 1367, 1383, n. 2 (10th Cir. 2009) ("If a
    party files a motion under FAA §§ 3 or 4, that motion is denied by the court . . . nothing prevents
25  that party from then filing a Rule 12 motion to dismiss).  Disney reserves the right to file a Rule
    12(b) motion on all applicable grounds at a later time.  *See Aetna Life Ins. Co. v. Alla Med. Servs.,
26  Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to dismiss or stay did not
    bar a later Rule 12(b) motion).
27  [2] ESPN+ content is available exclusively through the ESPN+ application and via ESPN.com.

28

Hogan Lovells US
LLP
Attorneys At Law

Disney Bundle Subscription after being notified of the update to the Agreement's terms, including the arbitration provision.  Declaration of Kelsey Raschke ("Raschke Decl."), ¶¶ 3-9; Morgan Decl. ¶ 19.  As described below, the terms of the Subscriber Agreements applied to Plaintiff's use of the Disney+ and ESPN+ Services, including ESPN.com.  Morgan Decl., Ex. B.  The Subscriber Agreements also contain "Binding Arbitration and Class Action Waiver" provisions ("Arbitration Provision"), which cover "all disputes" between a subscriber and Disney.  Ex. B.[3]

i.   *Plaintiff Purchased and Enrolled in a Disney Bundle Subscription in September 2021.*

On September 29, 2021, Plaintiff upgraded an existing stand-alone Disney+ subscription to a Disney Bundle subscription, which includes ESPN+.  In doing so, Plaintiff assented to the 2021 Subscriber Agreement.  Morgan Decl. ¶¶ 7-12.

In order for an existing Disney+ subscriber to enroll in the Disney Bundle in September 2021, as here, Plaintiff would have to follow one of two possible Subscription Registration Processes: (i) enter the Disney+ website and stack the Disney Bundle with his existing Disney+ subscription ("Stack Registration Process") or (ii) enter the account settings within his existing Disney+ subscription and switch into the Disney Bundle ("Switch Registration Process").  *Id*. ¶ 9, Ex. A.

**Stack Registration Process**:  If Plaintiff enrolled in his Disney Bundle through the Stack Registration Process, he would have *twice* been required to assent to Disney Subscriber Agreement.  In the Stack Registration Process, a customer must either go directly to the Disney+ website (www.disneyplus.com) (Morgan Decl., Ex. A at 3) or would arrive at the marketing

---

[3] In addition to the Subscriber Agreements, Plaintiff assented to ESPN's Terms of Use when he created and registered an ESPN account in December 2013, after he was presented with notice of the Terms of Use.  Declaration of Scott Connor ("Connor Decl.") ¶¶ 4-8.  The Terms of Use likewise contain binding Arbitration and Class Action Waiver.  *Id*. ¶¶ 8; C at 11.

landing page (www.disneyplus.com/disneybundle). *Id.* ¶ 10(a), Ex. A at 4. The customer was then presented with the option to "Get the Disney Bundle." *Id.* ¶ 10(a), Ex. A at 4. If that option was selected, the customer would reach the registration webpage, which required an email address to register. *Id.* ¶ 10(b), Ex. A at 5. The registration webpage included a large blue clickable button with white font that stated "Agree & Continue." *Id.* Immediately above the "Agree & Continue" button was the Disney Registration Acknowledgment, which described the conditions to which the customer was assenting. *Id.* The Disney Registration Acknowledgment stated in part, "By clicking 'Agree & Continue,' you agree to our <u>Subscriber Agreement</u> and acknowledge that you have read our <u>Privacy Policy</u>." *Id.* The "<u>Subscriber Agreement</u>" and "<u>Privacy Policy</u>" were available via clickable hyperlinks, underlined and in blue font. *Id.* Each led, respectively, to the "Disney+ and ESPN+'s Subscriber Agreement" and the Privacy Policy. *Id.*



*Id.*, Ex. A at 5.

If the customer entered an email address on the registration page associated with an existing Disney Streaming account, they were next presented with a password entry webpage to complete the login to their account. *Id.* ¶ 10(c), Ex. A at 6. Once logged in, the customer was

taken to the payment webpage.  *Id.* ¶ 10(d), Ex. A at 7-8.  The payment webpage notified the customer of the covered services and costs, and required the customer to enter their payment information.  *Id.*  The payment webpage included a large blue clickable button with white font that stated "Agree & Subscribe."  *Id.*  Immediately above the "Agree & Subscribe" button is the Disney Payment Acknowledgment, which described the conditions to which the customer was assenting.  *Id.*  The Disney Payment Acknowledgment stated in part, "By clicking 'Agree & Subscribe,' you agree to our Subscriber Agreement and are enrolling in automatic payments for The Disney Bundle of $13.99/month . . . that will continue until you cancel."  *Id.*  The "Subscriber Agreement" was available via clickable hyperlink, offset in a contrasting blue font against a black background.  If accessed, it led to the "Disney+ and ESPN+ Subscriber Agreement."  *Id.*  A customer would not have been able to purchase and enroll in their Disney Bundle subscription through the Stack Registration Process without clicking the "Agree & Subscribe" button.  *Id.*



Ex. A at 7.

**Switch Registration Process:** The only other way Plaintiff could have purchase and enrolled in his Disney Bundle subscription in September 2021 was through the Switch Registration

Process.  In the Switch Registration Process, an existing subscriber would sign in to their Disney+ account and navigate to their Account Settings by clicking on their profile icon and selecting "Account" in the drop down menu.  *Id*. ¶ 11(a); Ex. A at 11.  The Account Settings webpage displayed the customer's email address, password, and existing subscription, and provided the customer the option to switch to the Disney Bundle.  *Id*. ¶ 11(b); Ex. A at 12.

If the customer selected to switch to the Disney Bundle, they were taken to an identical payment webpage as displayed in the Stack Registration Process.  *Id*. ¶ 11(c); Ex. A at 13.  The payment webpage again included a large blue clickable button with white font that stated "Agree & Subscribe." *Id*.  Immediately above the "Agree & Subscribe" button was the Disney Payment Acknowledgment, which described the conditions to which the customer was assenting.  *Id*.  The Disney Payment Acknowledgment stated in part, "By clicking 'Agree & Subscribe,' you agree to our Subscriber Agreement and are enrolling in automatic payments for The Disney Bundle of $13.99/month . . . that will continue until you cancel." *Id*.  The "Subscriber Agreement" was available via a clickable hyperlink, offset in a contrasting blue font against a black background.  If accessed, it led to the "Disney+ and ESPN+ Subscriber Agreement." *Id*.  To complete the Switch Registration Process, the customer was required to enter their payment information and click the blue "Agree & Subscribe" button, directly below the Payment Acknowledgment.  *Id*. ¶ 11(d).  The customer would not have been able to switch into or enroll in their Disney Bundle subscription through the Switch Registration Process without clicking the "Agree & Subscribe" button.  *Id*.

Plaintiff could not have switched into or enrolled in his Disney Bundle subscription in September 2021 without completing either the Stack Registration Process (*id*. ¶¶ 10(a)-12(e)) or, alternatively, the Switch Registration Process.  *Id*. ¶¶ 11(a)-12(d).  Both Processes required Plaintiff to assent to the Subscriber Agreement when submitting his payment information in order to switch into his Disney Bundle subscription.

ii.     *Plaintiff Received Notice of an Update to His Subscriber Agreement in September 2022.*

Beyond Plaintiff's assent through either the Stack or Switch registration processes described above, Disney sent two notification emails to Plaintiff's email address on September 29, 2022 notifying him of updates to the Subscriber Agreement, including updates to the arbitration provision contained therein, effective beginning on November 3, 2022.  *See* Raschke Decl., ¶ 5, Ex. A.  The emails highlighted key changes to the Subscriber Agreement and notified Plaintiff that updates were being made to the arbitration agreement "to be more specific about the procedures for resolving any disputes relating to your subscription and our services."  *Id.* ¶ 7; Ex. A. Disney Streaming's records indicate that Plaintiff continued to utilize his Disney Bundle subscription, including viewing ESPN+ content, after the November 4, 2022 effective date for the updated 2022 Subscriber Agreement.  Morgan Decl. ¶ 19.

iii.    *The Subscriber Agreements Include A Prominent Binding Arbitration And Class Action Waiver Provision.*

The Subscriber Agreements, to which Plaintiff assented, contain a Binding Arbitration and Class Action Waiver provision ("Arbitration Provision").  Morgan Decl., Ex. B ("2021 Subscriber Agreement"); *see also* Ex. C ("2022 Subscriber Agreement").  The Arbitration Provision requires that "***all*** disputes" between Plaintiff and Disney be resolved through binding arbitration or small claims court, and must be conducted on an individual rather than classwide basis.  Morgan Decl. ¶¶ 14-18.

In addition, conspicuous notice of the Arbitration Provision is prominently featured on the first page of the 2021 Subscriber Agreement in all capital letters in bold font, stating:

> **ANY DISPUTE BETWEEN YOU AND US, EXCEPT FOR SMALL CLAIMS, IS SUBJECT TO A CLASS ACTION WAIVER AND MUST BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION. PLEASE READ THE ARBITRATION PROVISION IN THIS AGREEMENT AS IT AFFECTS YOUR RIGHTS UNDER THIS CONTRACT.**

Morgan Decl., Ex. B at 1; *see also* Ex. C at 1.

Section 7 of the 2021 Subscriber Agreement titled "Binding Arbitration and Class Action Waiver," further details the terms of the Arbitration Provision. The Arbitration Provision states at the outset, "PROCEEDINGS TO RESOLVE OR LITIGATE A DISPUTE IN ANY FORUM WILL BE CONDUCTED ON AN INDIVIDUAL BASIS." *Id*., Ex. B at 11; *see also* Ex. C at 11 (capitalization in original). It further reiterates that "(n)either you nor Disney+ nor ESPN+ will seek to have a dispute heard as a class action . . . ." *Id*. It next notes that the Arbitration Provision covers "all disputes" between the customer and Disney+, ESPN+, and "any related disputes involving The Walt Disney Company or its affiliates." *Id*.

"Dispute" is defined to mean "any dispute, action, or other controversy, whether based on past, present, or future events," between Plaintiff and Disney "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." *Id*. The "ESPN+ Service" includes "the ESPN+ website, application and associated content and services."[4] *Id*., Ex. B at 1.

The Arbitration Provision also delegates to the arbitrator all questions about the applicability, enforceability, and scope of the agreement to arbitrate, including the scope of the Provision:

> You and Disney+ and/or ESPN+ empower the arbitrator with the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, including the arbitrability of any dispute and any claim that all or any part of this Subscriber Agreement are void or voidable.[5]

---

[4] By its terms, the 2022 Subscriber Agreement applies to "the ESPN+ website, application and associated content and ***other*** services," including ESPN.com. Morgan Decl., Ex. C at 1 (emphasis added).

[5] The 2022 Subscriber Agreement includes modified language in the last sentence reading "including, ***without limitation***, the arbitrability of any dispute and any claim that all or any part of this Agreement are void or voidable." Morgan Decl., Ex. C at 9-10 (emphasis added).

*Id.*, Ex. B at 11.

## ARGUMENT

Plaintiff entered into a valid and enforceable arbitration agreement by which he expressly agreed to pursue his claims through arbitration rather than in court, and by which he agreed that an arbitrator—not a court—would address the scope and enforceability of the arbitration agreement.  The Court should order Plaintiff to arbitrate his claim on an individual basis pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

## I.   THE FAA STRONGLY FAVORS THE ENFORCEABILITY OF ARBITRATION AGREEMENTS.

The FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced nationwide.  "[T]he law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018); *see also e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (explaining that "courts must place arbitration agreements on an equal footing with other contracts"); *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) (same).  The FAA's central provision states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The district court's role thus is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  *Id*.  Indeed, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration" if it concludes that the parties have agreed to arbitrate the dispute.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Chiron Corp.*, 207 F.3d at 1130.

1     Here, the parties unquestionably entered into an agreement to arbitrate, prominently

2  included in the 2021 Subscriber Agreement to which Plaintiff assented. [6] *See* Morgan Decl. ¶¶ 13-

3  15.  This arbitration agreement is governed by the FAA because the underlying written contracts

4  involve interstate commerce.  *See* 9 U.S.C. § 2 (extending to a written arbitration "provision in

5  any . . . contract evidencing a transaction involving commerce"); *Allied-Bruce Terminix Cos. v.*

6  *Dobson,* 513 U.S. 265, 273–74 (1995) (holding that FAA applies broadly to reach transactions

7  "affecting" commerce).  Because Plaintiff accessed Disney Streaming services, including ESPN+

8  and ESPN.com, through the internet—which necessarily involves interstate commerce—the FAA

9  applies, and Plaintiff's claims must be submitted to arbitration.  *See e.g.*, *United States v. Sutcliffe*,

10  505 F.3d 944, 953 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate

11  commerce."); *S.S. by and through Stern v. Peloton Interactive, Inc*., 566 F. Supp. 3d 1019, 1042

12  (S.D. Cal. 2021) ("To the extent the contract [regarding the arbitration provision] pertains to use

13  of Peloton's Services (*e.g.*, its app, website, and on-demand fitness classes), because those services

14  require use of the Internet, the Agreement would involve interstate commerce.").

15     If a valid arbitration agreement exists—as it does here—the court "shall make an order

16  directing the parties to proceed to arbitration in accord with the terms of the agreement," 9

17  U.S.C. § 4, and . . . "stay the trial of the action until such arbitration has been had in accordance

18  with the terms of the agreement." *Id.* § 3; *see also Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir.

19  2011) (explaining operation of FAA Sections 2-4).

---

[6] To be clear, Plaintiff also assented to the arbitration provision in the updated 2022 Subscriber Agreement, as described above.  However, this brief primarily addresses Plaintiff's assent to the 2021 Subscriber Agreement.

1

## II.     **PLAINTIFF INDISPUTABLY ENTERED INTO A VALID AND ENFORCEABLE ARBITRATION AGREEMENT WITH DISNEY.**

2

3          Plaintiff entered into valid and enforceable arbitration agreement with Disney when he

4    assented to the 2021 Subscriber Agreement upon purchasing and enrolling in his Disney Bundle

5    subscription, Morgan Decl. ¶¶ 7-12, which was further confirmed by his continued use of his

6    Disney Bundle subscription after receiving notice of the updated 2022 Subscriber Agreement.

7    Raschke Decl. ¶¶ 4-9; Morgan Decl. ¶¶ 16-19.   The 2021 Subscriber Agreement included a

8    mandatory arbitration and class action waiver provision.  Morgan Decl. ¶¶ 14-15,; Ex. B at 11.

9          With an eye toward the federal preference for arbitration, the validity of an agreement to

10   arbitrate is assessed under state law.  *See* 9 U.S.C. § 2 (providing that arbitration agreements "shall

11   be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

12   revocation of any contract.").  The Court "must apply the choice-of-law rules of the forum state—

13   here, California—in determining which state's laws to apply in analyzing the validity of an

14   arbitration agreement." *Campos v. JPMorgan Chase Bank, NA*, 2019 WL 827634, at *4 (N.D. Cal.

15   Feb. 21, 2019); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When

16   deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should

17

18   apply ordinary state-law principles that govern the formation of contracts.").

19

20         Under California law, the essential elements for a contract are (1) "[p]arties capable of

21   contracting;" (2) "[t]heir consent;" (3) "[a] lawful object;" and (4) "[s]ufficient cause or

22   consideration." *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal.

23   Civ. Code § 1550).[7]   Further, "California has a strong public policy in favor of arbitration and

24

---

25   [7] This portion of the brief cites primarily to California law on the issue of contract formation.  The
26   Court need not resolve any choice-of-law questions because the elements of contract formation do
     not materially differ among the laws of California, Pennsylvania (Plaintiff's home state), and New
27   York (the jurisdiction named in the Subscriber Agreements' choice of law provision). *Compare*
     *Hayes v. Kutty*, 2017 WL 3208695, at *4 (Pa. Super. Ct. July 28, 2017) (a binding contract was
28   created where there was "offer, acceptance and consideration") *with N.F.L. Ins. Ltd. v. B & B*

any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." *Laymon v. J. Rockcliff, Inc.*, 219 Cal. Rptr. 3d 185, 192 (Cal. Ct. App. 2017).  Because Plaintiff manifested assent to the 2021 Subscriber Agreement (and further agreed to arbitrate his claims after accepting the 2022 Subscriber Agreement), his claims are subject to arbitration.

## A.  <u>Plaintiff Manifested His Assent to Arbitrate.</u>

Plaintiff had notice of and agreed to the 2021 Subscriber Agreement, including the clear and conspicuous Arbitration Provision therein when enrolling in his Disney Bundle subscription in 2021.  *See* Morgan Decl. ¶¶ 7-12.  That assent is further evidenced by his continued use of his subscription after receiving the 2022 Subscriber Agreement update notification email.  Raschke Decl.  ¶¶ 5-9; Morgan Decl. ¶ 19.

Under California law, when evaluating online agreements, "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement."  *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).  There are a spectrum of types of online agreements providing differing levels of manifestations of consent.  Sign-in wrap agreements—like the 2021 Subscriber Agreement—are where a user "signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *Berman  v. Freedom Fin. Network, LLC*, 30 F.4th 849, 865 (9th Cir. 2002) (Baker, J., concurrence).

---

*Holdings, Inc.*, 874 F. Supp. 606, 610-11 (S.D.N.Y. 1995) ("Under . . . New York . . . law, the general requisites for formation of a contract include offer, acceptance, and consideration."). Where the potentially applicable foreign states' law "apply substantially similar rules" as California, the Court "need not engage in a detailed choice-of-law analysis." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th at 515 (9th Cir. 2023).  However, any interpretation of the Subscriber Agreements' terms themselves should be governed by New York, due to the Agreement's clear choice-of-law provision.  Morgan Decl., Ex. B at 15; Ex. C at 14; *see also Smith, Valentino & Smith, Inc. v. L.A. Super. Ct.*, 551 P.2d 1206, 1208 (Cal. 1976) ("[C]hoice of law provisions are usually respected by California courts.").

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:22-CV-09155-EMC

Sign-in wrap agreements are enforceable where, as here, "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 856.  In order to be "reasonably conspicuous." the Ninth Circuit has made clear that the notice provided "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* at 856.  Second, if a hyperlink to the agreement is used, it must be readily apparent—factors to consider include: (i) whether the font is in a contrasting color (typically blue), (ii) is in all capital letters, and (iii) whether it is underlined.  *See id.* at 857.

The second part of the test—whether the user takes some action that unambiguously manifests assent—is relatively straightforward**:** "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."  *Oberstein*, 60 F.4th at 515 (9th Cir. 2023) (quoting *Berman*, 30 F.4th at 857).

Here, both elements of the *Berman* test are easily met.  The 2021 Disney payment webpage includes many of the design elements held to provide conspicuous notice by the Ninth Circuit, including the fact that (i) the Subscriber Agreement was displayed in the same legible font size as the surrounding text, (ii) the hyperlinked Agreement text was displayed in a contrasting blue color against a black background, and (iii) the notice was in close proximation to the assent button. *Berman*, 30 F.4th at 857; Morgan Decl., Ex. A at 7, 13; *see* Section B, *supra*.   Plaintiff unambiguously manifested his assent to the 2021 Subscriber Agreement by clicking the "Agree & Subscribe" button after the Payment Acknowledgment "explicitly advised" him that doing so constituted assent to the terms.  Morgan Decl. ¶¶ 10(d)-10(e), 11(c)-(d); Ex. A at 7, 13.   The Payment Acknowledgment located directly above the "Agree & Subscribe" button, unequivocally

Hogan Lovells US LLP
Attorneys At Law

1    stated, "By clicking 'Agree & Subscribe,' you agree to our <u>Subscriber Agreement</u> and are enrolling

2    in automatic payments for The Disney Bundle. . . ."  These Payment Acknowledgement terms

3    were "placed conspicuously close" to the assent button.  *See Oberstein*, 2021 WL 4772885, at *6

4    (emphasis added); Morgan Decl., Ex. A at 7, 13.

5        Comparing the notices the Ninth Circuit panel found to be insufficient in *Berman* with

6    Disney's notices highlights their significant differences.  *Compare Berman*, 30 F.4th at 859, App'x

7    A-B *with* Morgan Decl. Ex. A at 7, 13.[8]

8

9

10

11

 

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26   [8] A court may consider evidence outside the pleadings when ruling on a Rule 12 (b)(1) motion to dismiss and a motion to compel arbitration.  *Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712

27   (9th Cir. 2021).  A court may take judicial notice of documents filed in other courts.  *Evans v. All. Funding*, 2010 WL 11482495, at *7 (C.D. Cal. Dec. 13, 2010); *see also Reyn's Pasta Bella, LLC*

28   *v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).



Courts routinely enforce comparable online agreements.  For instance, in *Hansen v. Ticketmaster Ent., Inc.*, the court was asked to evaluate whether the plaintiff had constructive notice of Ticketmaster's Terms of Use ("TOU") displayed on a sign-in page providing similar notice as here.  2020 WL 7319358 (N.D. Cal. Dec. 11, 2020). The Court held that the notice provided was reasonably conspicuous because (i) "[t]he sign-in page at issue was relatively uncluttered;" (ii) "[t]he proximity of the text to the 'Sign in' button makes the text conspicuous;" (iii) "the text is not markedly smaller than the other text, and the grey is in sufficient contrast to the background which is white;" and (iv) "the phrase 'Terms of Use' appears in blue font so that there is even more contrast." *Id*. at *4.  *Hansen*, 2020 WL 7319358, ECF No. 23-3.



MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:22-CV-09155-EMC

Here too, Disney's notice is supported by a similar set of design factors.  *See* Morgan Decl., Ex. A at 7, 12.  The Disney 2021 payment webpage is likewise uncluttered.  *Id*.  The Payment Acknowledgement is placed in close proximity to the assent button; the text of the Payment Acknowledgement is not markedly smaller and is in clear legible white font, and the Subscriber Agreement hyperlink is prominently contrasted in blue font against a black background.  *See id*. Additionally, with respect to the unambiguous assent prong, Disney's webpage goes a step further than Ticketmaster's webpage in the *Hansen* case.  Ticketmaster's webpage merely states "By continuing past this page, you agree to the Terms of Use" and provides a button reading "Sign in"—however, the button's text provides no explicit notice of the legal significance of the clicking action.  *Hansen*, 2020 WL 7319358, ECF No. 23-3.  In contrast, Disney's assent button, specifically denotes the legal significance of the clicking action by explicitly labelling the assent button with the text "***Agree*** & Subscribe."  Morgan Decl., Ex. A at 7, 12 (emphasis added).

Disney's straightforward Payment Acknowledgment located directly above its "Agree & Subscribe" button, with hyperlinks in blue against a black background, offered clear and conspicuous notice to Plaintiff that clicking the button constituted his agreement to the 2021 Subscriber Agreement.  For these reasons, Plaintiff clearly manifested his agreement to the Arbitration Provision in the 2021 Subscriber Agreement.

Plaintiff further manifested his assent to the Arbitration Provision through the continued use of the Disney Bundle service, after receiving emails in September 2022 about updates to the Subscription Agreement and the arbitration agreement.  *See* Raschke Decl. ¶¶ 3-9; Morgan Decl. ¶ 19; *see Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012) (noting that a party's acceptance of an arbitration agreement may be express through signature or "implied in fact"); *see also West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (concluding that Uber's notification email provided sufficient notice such that

Plaintiff's continued use of Uber's service constituted assent to updated terms and the arbitration agreement therein); *Heller v. Rasier, LLC*, 2020 WL 413243, at *11 (C.D. Cal. Jan. 7, 2020) (same); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1164 (N.D. Cal. 2016) ("individualized notice in combination with a user's continued use is enough for notice and assent."). Plaintiff has continued to utilize his Disney Bundle Subscription, including viewing ESPN+ streaming content as recently as January 2023. Morgan. Decl. ¶ 19.[9]

## B. **Disney's Arbitration Provision Is Not Unconscionable.**

Under California law, Plaintiff has the burden to show that the agreements to arbitrate are procedurally and substantively unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016).[10] To be procedurally unconscionable, an arbitration clause must result in "oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower*, 282 P.3d 12217 at 1232. To be substantively unconscionable, the clause "must be so one-sided as to shock the conscience." *Id.* Disney's Arbitration Provision is neither.[11]

*i.   Disney's Arbitration Provision is not procedurally unconscionable.*

Plaintiff cannot plausibly maintain that the Arbitration Provision is procedurally unconscionable for at least three reasons:

First, the Arbitration Provision is not "buried in a lengthy . . . agreement," rather, it is conspicuously disclosed on the first page of the Subscriber Agreement in bold font and all capital letters. Morgan Decl., Ex. B at 1, Ex. C at 1; *see also Alfia v. Coinbase Glob., Inc.*, 2022 WL

---

[9] As noted, Plaintiff also assented to Disney's 2013 Terms and the arbitration agreement therein when creating his ESPN account. Connor Decl. ¶¶ 4-8.

[10] The laws of California, Pennsylvania, and New York governing unconscionability require a substantially similar analysis. *See, e.g., Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 827 (N.Y. 1988).

[11] The Arbitration Provisions contained in the 2021 Subscriber Agreement and the 2022 Subscriber Agreement are materially similar.

3205036, at *3-4 (N.D. Cal. July 22, 2022) (noting that the arbitration provision was not procedurally unconscionable because it was, in part, "labeled 'Arbitration; Waiver of Class Action' in bold print.").  The Arbitration Provision header here also is included among the "List of Sections" on the first page of the Subscriber Agreements.  Morgan Decl., Ex. B at 1, Ex. C at 1 ("7.  Binding Arbitration and Class Action Waiver"); *see also Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 808 (Cal. Ct. App. 2005) ("[A] clear heading in a contract may refute a claim of surprise.").

Second, in assessing unconscionability, courts consider whether "the challenged term is in a contract concerning a nonessential recreational activity," where plaintiffs "always ha[ve] the option of simply forgoing the activity."  *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019).  Here, visiting ESPN.com and/or streaming entertainment through ESPN is nonessential and recreational.  *See id.* ("Facebook's social media service . . . is not one of life's necessities . . . [t]his remains fatal to finding oppression here."); *see, e.g., Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022) ("[Plaintiff] could have avoided Zoosk's alleged unconscionable policies by simply opting out of its dating service, a 'nonessential recreational activity.'"); *see also, e.g. Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Cal. Ct. App. 2007) ("Listening to music or FM radio is also a nonessential recreational activity that plaintiffs could simply have forgone if they disliked the requirement that they purchase the basic cable tier.").

Third, Plaintiff had a meaningful choice whether to accept the Subscriber Agreement, and the Arbitration Provision contained therein.  In particular, Plaintiff has ample access to a plethora of reasonable market alternatives for sports news and streaming entertainment.  *See e.g.*, *Zoosk*, 2022 WL 2967237, at *2  (compelling arbitration, in part, because "[Plaintiff] had meaningful market alternatives to Zoosk, as there are many other dating apps available to consumers today.");

*see also George v. eBay, Inc.*, 286 Cal. Rptr. 3d 492, 500-01 (Cal. Ct. App. 2021) ("[Plaintiff] has not alleged facts demonstrating that it is unconscionable, as it does not allege that sellers on eBay had no alternatives."); *Belton*, 60 Cal. Rptr. 3d at 650 (finding terms not to be unconscionable, "[t]he availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice.").

Plaintiff will be unable to meet his burden to show that the Arbitration Provision is procedurally unconscionable.

*ii.    Disney's Arbitration Provision is not substantively unconscionable.*

Nor is the Arbitration Provision substantively unconscionable.  Far from "being so one-sided to shock the conscience," the Arbitration Provision here provides numerous safeguards to preserve Plaintiff's ability to pursue individual arbitration and fully protect his rights.  Those safeguards include (i) allowing for the arbitration to be conducted by phone or online (Morgan Decl., Ex. B at 12; Ex. C at 10); (ii) allowing for an in-person arbitration hearing in the user's hometown if they are unable to travel (*id.*); (iii) granting the arbitrator authority to grant declaratory and injunctive relief *(id.*, Ex. B at 12; Ex. C at 11); and (iv) allocating the arbitration filing and JAMS Case Management fees to Disney if "the arbitrator issues [Plaintiff] an award of damages and: (a) that award is greater than the amount of [Disney's] last written settlement offer; or (b) if [Disney] did not make a settlement offer."  *Id.*, Ex. B at 12, Ex. C at 11.

Further, the inclusion of a class action waiver does not render the Arbitration Provision substantively unconscionable.  *See Coneff v. AT & T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012) ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058–59 (9th Cir. 2013) (Plaintiff's argument that the agreement's ban on class arbitration is unconscionable "is now expressly foreclosed by *Concepcion*.") (citing *AT&T*

Hogan Lovells US
LLP
Attorneys At Law

1    *Mobility*, 563 U.S. at 350-51).  Similarly, whether Plaintiff has sufficient incentive to pursue his

2    claim through individual arbitration is not "a legally cognizable issue."  *Zoosk*, 2022 WL 2967237,

3    at *2; *see also Coneff*, 673 F.3d at 1159 (whether a customer has sufficient incentive to vindicate

4    their rights is an "unrelated policy concern[], [that] however worthwhile, cannot undermine the

5    FAA.") (citing *Concepcion*, 161 S. Ct. at 1753).

6           The Arbitration Provision is not substantively unconscionable.

7

8    **III.    PLAINTIFF AGREED TO ARBITRATE "GATEWAY" ISSUES OF
             ARBITRABILITY.**

9

10          Before analyzing whether Plaintiff's specific claims are subject to the parties' arbitration

11   agreement, the Court must look to the underlying contract to determine whether the parties agreed

12   that the arbitrator would make that call.  Here, Plaintiff agreed to delegate all questions of

13   applicability, enforceability, and scope to the arbitrator, not the Court.

14          When there is "clear and unmistakable evidence" that the parties agreed that an arbitrator

15   would decide issues of arbitrability, courts must respect that agreement.  *See First Options* , 514

16   U.S. at 944 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

17   The Supreme Court has held that "[a]n agreement to arbitrate a gateway issue is simply an

18   additional, antecedent agreement the party seeking arbitration asks the federal court to enforce,

19   and the FAA operates on this additional arbitration agreement just as it does on any other."  *Rent-*

20   *A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Henry Schein, Inc. v. Archer & White Sales,*

21   *Inc.*, 139 S. Ct. 524, 529 (2019) ("a court may not override the contract" between parties who

22   "agree to have an arbitrator decide . . . gateway questions of arbitrability").  Both New York and

23   California courts also have enforced delegation agreements to arbitrate disputes about the

24   enforceability and scope of an arbitration agreement.  *Momot*, 652 F.3d at 988; *Brennan v. Opus*

25

26

27

28

*Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 489 (S.D.N.Y. 2022).

Here, Plaintiff "clearly and unmistakably" agreed to delegate gateway issues of arbitrability exclusively to the arbitrator. The plain language of the Arbitration Provision expressly delegates the arbitrator—not a court— with the **"*exclusive authority*"** to resolve "any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, ***including the arbitrability of any dispute*. . . .**" Morgan Decl., Ex. B at 11, Ex. C at 9-10 (emphasis added). It is difficult to imagine more definitive statements of delegation than these. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 68 (finding delegation clear and unmistakable where contract provided "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement . . . ."); *Sinavsky v. NBCUniversal Media, LLC*, 2021 WL 4151013, at *5 (S.D.N.Y. Sept. 13, 2021) (same); *Momot*, 652 F.3d at 988 (finding that language delegating to the arbitrators the authority to determine "the validity or application" of the arbitration clause constituted an agreement to arbitrate threshold issues).

Plaintiff further agreed to delegate arbitrability to the arbitrator because the Subscriber Agreement explicitly incorporates the JAMS Rules, which provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." [12] *See* Morgan Decl., Ex. B at 11, Ex. C at 11. The JAMS Rules provide that Incorporation of arbitration rules that themselves reserve the question of arbitrability for the arbitrator "constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate

---

[12] JAMS Streamlined Arbitration Rules & Procedures, Rule 8(b), available at https://www.jamsadr.com/rules-streamlined-arbitration.com (last visited Dec. 9, 2022).

arbitrability].”  *See Brennan*, 796 F.3d at 1130-31; *see also Diaz v. Intuit, Inc.*, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017), *motion to certify appeal denied*, 2018 WL 934875 (N.D. Cal. Feb. 16, 2018) (finding that the parties delegated arbitrability to an arbitrator where the terms referenced AAA rules).

## IV.   WERE THIS COURT TO ASSESS ARBITRABILITY, PLAINTIFF'S CLAIMS ARE COVERED BY THE ARBITRATION AGREEMENT.

The Court should compel arbitration even if it were to decide, contrary to the parties' delegation agreements, that it (rather than the arbitrator) should assess gateways issues of arbitrability, including whether Plaintiff's claims fall within the Arbitration Agreement.   When, unlike here, there is no delegation provision, federal courts make two threshold determinations under the FAA: (1) whether there is a valid agreement between the parties to arbitrate; and (ii) whether that agreement covers the dispute.  *See Geier v. m-Qube, Inc.*, 824 F.3d 797, 799 (9th Cir. 2015) (per curiam); *see also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).

As discussed in Section II, there is a valid agreement to arbitrate.  As for whether the agreement covers the dispute, “[w]hen [] parties have a contract that provides for arbitration of *some* issues," a presumption in favor of arbitrability attaches.”  *First Options*, 514 U.S. at 944 (emphasis added).   Indeed, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.” *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128.  The presumption in favor of arbitration is even stronger when the arbitration provision is broadly worded, as here. *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993); *see e.g., Chiron Corp.*, 207 F.3d at 1131(“The parties' arbitration clause is broad and far reaching: ‘Any dispute, controversy or claim arising out of or relating to the validity, construction,

enforceability or performance of this Agreement shall be settled by binding Alternate Dispute Resolution. . . .'"").

Here, the Arbitration Agreement is "broad and far reaching," requiring binding arbitration of "***any dispute***," including "***any dispute, action, or other controversy, whether based on past, present, or future events***," between Plaintiff and Disney, which includes ESPN + and any "***associated content and services***," such as ESPN.com.[13]  Morgan Decl., Ex. B at 1, 11, Ex. C at 1, 9 (emphasis added).  Here, Plaintiff's claim for violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act arise out of his use of ESPN.com and is therefore covered under the arbitration agreement.  *Id.*, Ex. B at 1, Ex. C at 1.  Plaintiff's claims fall within the scope of the Arbitration Agreement here.

## V.   A STAY OF THE PROCEEDING IS WARRANTED.

Disney respectfully requests that the litigation be stayed pending the completion of Plaintiff's individual arbitration.  Where, as here, a valid arbitration agreement exists, a court must order the parties to arbitrate, 9 U.S.C. § 4, and stay the arbitral claims until the arbitration has occurred in accordance with the terms of the agreement, *id.* § 3.  "Section 3 of the Federal Arbitration Act compels courts to stay litigation of arbitrable issues."  *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002).

That stay should extend to all proceedings and discovery unrelated to the Court's determination of whether a valid arbitration agreement exists.  "Indeed, this is a common practice while motions to compel [arbitration] are pending."  *Stiener v. Apple Computer, Inc.*, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007).  Courts in this District routinely stay discovery pending resolution of a motion to compel arbitration.  *See e.g.*, *id.* ("In the interests of conserving the

---

[13] By its terms, the 2022 Subscriber Agreement applies to "the ESPN+ website, application and associated content and ***other*** services," such as ESPN.com here.  Ex. C at 1 (emphasis added).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:22-CV-09155-EMC

resources of the parties, a short stay of the initial scheduling obligations and discovery pending the determination of the motion to compel arbitration is therefore prudent."); *Mahamedi IP L., LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (collecting cases). This Court should do the same. *See Stiener*, 2007 WL 4219388, at *1 (citing *CIGNA Health Care of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002)) ("[L]itigation will proceed in an arbitral forum, not in this Court. [R]esponsibility for the conduct of discovery lies with the arbitrators.").

## <u>CONCLUSION</u>

For these reasons, this Court should order Plaintiff's claims to individual arbitration and stay this litigation pending the conclusion of individual arbitration proceedings.

1  | Dated:  April 6, 2023

2

HOGAN LOVELLS US LLP

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Allison M. Ryan
(*pro hac vice applications to be submitted*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637–5600
Facsimile: (202) 637–5910
allison.holt-ryan@hoganlovells.com

*Attorneys for Defendant*
*The Walt Disney Company*